UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TELECOM DECISION MAKERS, INC.                                             PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:08CV-609-S

BIRCH COMMUNICATIONS, INC. f/k/a
ACCESS INTEGRATED NETWORKS, INC.                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action seeking to ascertain the rights and obligations, if any, of the parties, Telecom Decision Makers, Inc. ("Telecom") and Birch Communications, Inc. f/k/a Access Integrated Networks, Inc. ("Birch") under a Sales Representative Agreement between Telecom and a non-party, Navigator Telecommunications LLC ("Navigator"). The matter is presently before the court on motion of Telecom for leave to amend its complaint to add claims for civil conspiracy and tortious interference with contract, and to add a demand for punitive damages (DN 77).[1]

Telecom, an independent sales agent for the telecommunications industry, entered into a contract with Navigator, a telecommunications provider and non-party to the suit, for Telecom to develop residential and business accounts for Navigator's local and long distance telephone services. The contract provided, in part, that Navigator would pay Telecom continuing commissions on revenue-generating accounts established by Telecom until termination of the customer contract.

---

[1]Telecom also recently filed a motion for an "omnibus order" (DN 87), seeking to have a number of discovery issues and the motion to amend the complaint addressed by the United States Magistrate Judge. While that motion is not yet timely, it is, in fact, rendered moot by this opinion and order.

(Confidential Independent Sales Representative Agreement for Voice Products and Services (hereinafter, "the contract"), ¶ 8)(Referred to in the contract as "residual commissions," and also referred to by the parties as "evergreen commissions."). The contract further provided that

> This agreement is binding upon and shall inure to the benefit of the successors and assigns of Navigator in connection with and in contemplation of any reorganization, bankruptcy, merger, consolidation, or sale of all or substantially all of the ownership interest or assets of Navigator, or any other transaction substantially similar in effect (collectively "Change of Control"). Upon a Change of Control, this Agreement will be deemed assigned to Navigator's successor notwithstanding that the Assignment is formally reduced to writing or not...

(Contract, ¶ 13).

Birch purchased a portion of Navigator's assets in 2008. Prior to the execution of an Asset Purchase Agreement ("APA") between Navigator and Birch, Navigator gave Telecom notice that it intended to exercise a provision in their contract which allowed Navigator to terminate its arrangement with Telecom for its own convenience, but required that Navigator continue to make all payments (e.g. commissions) then due to Telecom under the contract terms. Contract, ¶ 11. Later, but still prior to execution of the APA, Birch notified Telecom that it was purchasing substantially all of the residential and business local and long distance customer accounts of Navigator. Once the APA was signed, Birch indicated that it had not assumed responsibility for and would not pay commissions to Telecom.

Telecom filed this action to obtain a declaration that Birch is obligated to pay commissions under the contract as Navigator's successor. Telecom contends that Birch's purchase constituted a "Change of Control," triggering an assignment of the obligation to pay commissions under paragraph 13 of the contract. Birch denies that its purchase constituted a "Change of Control" because it contends that the transaction did not involve substantially all of Navigator's assets. Birch

urges that Navigator's retention of a significant volume of other lines (referred to as "coin lines") precludes a finding of a "Change of Control."

There has been on-going contentious debate over the sufficiency of discovery provided by Birch both voluntarily and pursuant to orders of various courts. Birch moved for dismissal on the ground that a provision in the APA reciting that Birch was not acquiring all or substantially all of Navigator's assets established that the purchase did not result in a "Change of Control." In denying the motion, the court stated that

> There is thus a dispute of fact concerning the specifics of the asset purchase. Therefore, dismissal will be denied. Birch's APA language stands in juxtaposition with TDM's allegation, taken as true, that there was a "Change of Control," as that term is defined by it's agreement with Navigator, when the asset purchase was made.

6/20/09 Mem.Op. and Ord., p. 3.

Discovery has been limited to the threshold issue of whether there was a "Change of Control" by Birch's acquisition. The proper scope of discovery on this issue has been disputed. Recently, the magistrate judge ruled that Telecom

> is entitled to discover information that tends to support its theory of Change of Control. Birch's position, which would limit discovery to "number of lines sold" and "gross revenue" for determining Change of Control, is far too narrow. In the court's view, the plaintiff is entitled to its evidence and the opportunity to prove profitability as a legitimate measure of Change of Control or a transaction with a substantially similar effect. It may or may not ultimately prevail on this theory, but to deny the information as a threshold matter is unwarranted.

4/19/10 Mem. and Ord., p. 4.

Wrangling over access to various documents led to rulings from this court and from the United States District Court in Arkansas[2] in which a number of documents were ordered to be

---

[2]Telecom sought intervention by the United States District Court for the Eastern District of Arkansas to compel compliance
(continued...)

produced in connection with the deposition of David Stotelmeyer, Chief Financial Officer of Navigator.

Telecom now contends that it received "several incriminating documents." It urges that "These documents affirm [Telecom]'s long-held suspicion that Birch had improperly interfered with [Telecom]'s business relationship with Navigator." Telecom explains that

> Birch conferred with Navigator numerous times in 2008 about selling the corporation. Upon realizing Birch would assume liability for [Telecom]'s commissions, Birch began to investigate how to tailor the acquisition to cut them out. Ultimately, Birch persuaded Navigator to "reinterpret" the [contract] in order to escape liability.

DN 87-1, pp. 4-5. It insists that Birch and Navigator "colluded on a definition of Change of Control that would preclude [Telecom]'s claim," (*Id.*, p. 3), that Birch intended to cause Navigator to breach its contract with Telecom, (*Id.*, p. 5), and that Birch acted "without legitimate justification and with animosity towards [Telecom]." (*Id.*). Telecom contends that it now has a basis for claiming civil conspiracy and tortious interference with contract. Telecom further urges that upon the granting of leave to amend, the court should rescind the limitation on discovery and permit all aspects of the expanded claims to be developed. In particular, Telecom contends that the so-called "crime-fraud exception" to attorney-client confidentiality should come into play to afford Telecom access to previously-withheld document. It asserts that legal advice is not subject to protection if it was obtained for purposes of facilitating the commission of a crime or fraud by Birch and/or Navigator. Telecom's newly-proposed claims chart a course of litigation which veers far from that of the original contractual assignment claim.

---

²(...continued)
with subpoenas served on Navigator, which is located in North Little Rock, Arkansas.

The assignment claim poses a mixed question of law and fact. The trier of fact must determine whether a "Change of Control," as defined by the contract, occurred when Navigator and Birch entered into the APA. It must be determined whether the purchase of substantially all of Navigator's residential and business local and long distance customers constituted a sale of all or substantially all of Navigator's ownership interest or assets or a transaction substantially similar in effect.

Telecom's right to payments from Birch, an entity with whom it has no contract, is derived solely from the contract terms Telecom struck with Navigator. Telecom's rights rise or fall on the outcome of the contract claim. Thus, the question of whether a "Change of Control" occurred is the driving force in this litigation.

Telecom alleges that there was an agreement to structure Birch's asset purchase in such a way as to prevent Birch from attaining successor liability for the continuing commissions to Telecom. It was the interpretation of the terms of the Telecom/Navigator contract which Birch and Navigator apparently discussed and upon which they allegedly agreed they would base the purchase.[3] The question of the effect of the acquisition by Birch is the very subject concerning which Telecom contends there was "collusion." However, no agreement between Navigator and Birch could alter the obligations between Telecom and Navigator which are embodied in the Telecom/Navigator contract.

Under Kentucky law, a claim for tortious interference with contract requires proof, among other things, of an intentional and unjustified inducement to breach a contract. *See, ie., Monin v. Wal-Mart Real Estate Business Trust*, 2008 WL 352346 (Ky.App. Feb. 8, 2008), *citing NCAA v.*

---

[3]The court has not been provided copies of the "smoking gun" documents upon which Telecom relies, and therefore has attempted to glean the essence of the proposed claims from the briefs, for purposes of this ruling.

*Hornung*, 754 S.W.2d 855, 857 (Ky. 1988); 13 Ky. Prac. Tort Law § 17:1 (2010). A civil conspiracy claim requires a showing of collusion concerning a course of wrongdoing. *Fastenal Co. v. Crawford*, 609 F.Supp.2d 650, 662 (E.D.Ky. 2009), *citing Montogomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995). Telecom contends that the "breach" or "wrongdoing" which was induced was the attempt to structure the acquisition to avoid continued payments to Telecom.

The contract between Telecom and Navigator contemplates the possible sale of some or all of the assets of Navigator. Telecom and Navigator contracted for successor liability to attach only in the event of a "Change of Control" of Navigator, as the parties defined that term. Since the contract contemplates the potential sale of Navigator's assets, the court sees no basis upon which a claim for conspiratorial wrongdoing or tortious interference with Telecom's business relationship with Navigator could possibly be established.

An asset purchase which avoids assignment of a liability is specifically contemplated by the contract (*ie.* an acquisition which does not result in a "Change of Control."). The sole question to be determined is whether the APA was structured successfully to avoid the assignment of contract obligations to Birch. If there was no "Change of Control," Telecom would have no right under the contract to enforce against Birch. If a "Change of Control" occurred, then Telecom would succeed on its claim and recover the value of the contract obligation repudiated by Birch.

The legal machinations to structure a sale of assets in a way to avoid contractual ramifications is not only not illegal; it is not, in a free society, tortious. The only question this case presents is whether such machinations were successful, or if a "Change of Control" actually happened.

Telecom argues that the court found the terms of its agreement with Navigator ambiguous and ordered "extensive discovery on the factual circumstances surrounding the parties' original agreement." Reply in Sup. of Mot. to Am., p. 2. Nothing could be further from the truth. The court stated that

> Birch urges that a provision in its Asset Purchase Agreement ("APA") with Navigator which states that Birch did not acquire all or substantially all of Navigator's assets conclusively establishes that the sale did not result in a "Change of Control" under the terms of the T[elecom]/Navigator agreement. *There is a dispute of fact concerning the specifics of the asset purchase.* Therefore, dismissal will be denied. Birch's APA language stands in juxtaposition with *[Telecom's] allegation, taken as true [for purposes of a motion to dismiss], that there was a "Change of Control," as that term is defined by its agreement with Navigator, when the asset purchase was made.*

6/29/09 Mem. Op. and Ord., p. 3. To further clarify the scope of "Change of Control" discovery, the magistrate judge stated that

> [Telecom] is entitled to discover information that tends to support its theory of Change of Control. Birch's position, which would limit discovery to "number of lines sold" and "gross revenue" for determining Change of Control, is far to narrow. In the court's view, the plaintiff is entitled to its evidence and the opportunity to prove profitability as a legitimate measure of Change of Control or a transaction with a substantially similar effect. It may or may not prevail on its theory, but to deny the information as a threshold matter is unwarranted.

4/19/10 Ord., p. 4. Thus discovery must be focused on the specifics of the asset purchase.

It is rare for a court to deny a motion for leave to amend a complaint, as the general rule is that leave is to be freely given when justice so requires. Fed.R.Civ.P. 15(a)(2). The counterpoint to the rule, however, is that amendment may be denied when the proposed amendment would be futile. *Kottmeyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006). For the reasons stated herein, the court finds that the proposed amendments would improperly burden this action with legally unsupportable

claims and would lead to a course of discovery which would prove ultimately to be irrelevant to the outcome of the case.

The proposed claims would not survive a motion to dismiss. To overcome a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As explained in *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009),

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly, supra.*] at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id..*, at 557, 127 S.Ct. 1955 (bracket omitted).

Telecom's rhetoric aside, there are no *facts* identified in the proposed amended complaint sufficient to justify a claim of tortious or illegal conduct on the part of Birch in light of the provision in the Telecom/Navigator contract which contemplates the potential sale of assets by Navigator with or without a "Change of Control" of the company.

Telecom seeks additional time for "Change of Control" discovery in connection with its request that the scope of discovery be expanded to include the proposed tort claims. In a May 20, 2011 letter from counsel for Birch to counsel for Telecom, Birch takes the position that the extensions of the discovery period expired with the rulings issued on the last round of motions to compel production (in Arkansas) and for contempt (in Kentucky). As the court will deny the motion for leave to amend the complaint, there appears to be no need for another extension of the discovery deadline on the "Change of Control" question.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the motion of the plaintiff, Telecom Decision Makers, Inc., for leave to amend the complaint (DN 77) is **DENIED.**

**IT IS FURTHER ORDERED** that in light of this memorandum opinion and order, the motion of the plaintiff, Telecom Decision Makers, Inc., for an omnibus order (DN 87) is **DENIED AS MOOT.**

**IT IS SO ORDERED.**