UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


TELECOM DECISION MAKERS, INC.                                                            PLAINTIFF


v.                                                                          CIVIL ACTION NO. 3:08CV-609-S


BIRCH COMMUNICATIONS, INC. f/k/a
ACCESS INTEGRATED NETWORKS, INC.                                                          DEFENDANT


**MEMORANDUM OPINION AND ORDER**


This matter is before the court for consideration of the second motion of the plaintiff, Telecom Decision Makers, Inc., for leave to amend its complaint in this action concerning a contract between Telecom and a non-party to this action, Navigator Telecommunications, LLC. The pertinent facts are discussed in the nine-page Memorandum Opinion and Order in which the court denied a previous motion to amend (DN 90). We need only briefly revisit the facts here.

Telecom, an independent sales agent for the telecommunications industry, entered into a contract with Navigator, a telecommunications provider and non-party to the suit, for Telecom to develop residential and business accounts for Navigator's local and long distance telephone services. The contract provided, in part, that Navigator would pay Telecom continuing commissions on revenue-generating accounts established by Telecom until termination of the customer contract. (Confidential Independent Sales Representative Agreement for Voice Products and Services

(hereinafter, "the contract"), ¶ 8)(Referred to in the contract as "residual commissions," and also referred to by the parties as "evergreen commissions."). The contract further provided that

> This agreement is binding upon and shall inure to the benefit of the successors and assigns of Navigator in connection with and in contemplation of any reorganization, bankruptcy, merger, consolidation, or sale of all or substantially all of the ownership interest or assets of Navigator, or any other transaction substantially similar in effect (collectively "Change of Control"). Upon a Change of Control, this Agreement will be deemed assigned to Navigator's successor notwithstanding that the Assignment is formally reduced to writing or not...

(Contract, ¶ 13). Defendant Birch Communications, Inc. purchased some portion of Navigator's assets in 2008.

The potential for a sale of some or all of the assets of Navigator was addressed in the Telecom/Navigator Agreement. The Agreement addressed the handling of commissions to Telecom in such an eventuality. Telecom sued Birch, claiming that the obligation to pay commissions was assigned to Birch by virtue of Birch's purchase of assets of Navigator.

Telecom seeks to amend the complaint to claim that Navigator and Birch are tortfeasors and/or civil conspirators because they negotiated a sale which they jointly contend did not involve a "Change of Control" of Navigator. Telecom argues that the sale *did* result in a "Change of Control," and therefore Navigator's obligation to pay commissions was assigned. Birch has declined to acknowledge any obligation to Telecom.

The court has found previously that an issue of fact exists as to whether there was a "Change of Control" of Navigator.

In denying Telecom's previous motion for leave to amend the complaint, the court found that

> The contract between Telecom and Navigator contemplates the possible sale of some or all of the assets of Navigator. Telecom and Navigator contracted for successor liability to attach only in the event of a "Change of Control" of Navigator, as the parties defined that term. Since the contract contemplates the potential sale of

Navigator's assets, the court sees no basis upon which a claim for conspiratorial wrongdoing or tortious interference with Telecom's business relationship with Navigator could possibly be established.

An asset purchase which avoids assignment of a liability is specifically contemplated by the contract (*ie.* an acquisition which does not result in a "Change of Control."). The sole question to be determined is whether the APA was structured successfully to avoid the assignment of contract obligations to Birch. If there was no "Change of Control," Telecom would have no right under the contract to enforce against Birch. If a "Change of Control" occurred, then Telecom would succeed on its claim and recover the value of the contract obligation repudiated by Birch.
The legal machinations to structure a sale of assets in a way to avoid contractual ramifications is not only not illegal; it is not, in a free society, tortious. The only question this case presents is whether such machinations were successful, or if a "Change of Control" actually happened.

The proposed claims would not survive a motion to dismiss. To overcome a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As explained in *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009),

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly, supra.*] at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*., at 557, 127 S.Ct. 1955 (bracket omitted).

Telecom's rhetoric aside, there are no *facts* identified in the proposed amended complaint sufficient to justify a claim of tortious or illegal conduct on the part of Birch in light of the provision in the Telecom/Navigator contract which contemplates the potential sale of assets by Navigator with or without a "Change of Control" of the company.

Telecom seeks for a second time to amend the complaint. It focuses on the language "There are no *facts*," stating that "The revised complaint adds pages of newly discovered facts and

- 3 -

buttressed them with <u>exhibits</u>."  Reply, p. 2.  This statement; indeed, the entire exercise in again seeking amendment, wholly misses the point.  The provision in the Telecom/Navigator contract contemplated such a sale of Navigator assets to Birch, whether it resulted in a "Change of Control" or not.  The effect of that sale on Telecom's entitlement to commissions has yet to be determined.

Telecom seeks to repackage the claims under theories of tort and conspiracy.  It references documents passed between Navigator and Birch which Telecom characterizes as ill-intentioned and malicious.  Telecom contends that at some point during negotiations when Birch determined that it wanted only the most profitable 20,000 of the 90,000 Navigator contracts, Navigator "moved to the other side of the table" and aligned itself with Birch against Telecom.  The problem is, however, that Telecom was not at the table.  The negotiations were between Navigator and Birch for the sale of Navigator assets.  The ultimate impact of the sale for Telecom is simply a function of its contract with Navigator.  Either the sale, in fact, resulted in a "Change of Control" or it did not.  Thus Navigator and Birch's representation that there was no "Change of Control" will either be proven correct or incorrect at a later date.

Telecom urges that "Navigator had a good-faith duty to enforce T[elecom]'s right to evergreen commissions by opposing Birch's contrived construction of 'Change of Control.'"  Mem., p. 7. Whether Birch's construction of "Change of Control" is  "contrived," to use Telecom's terminology, is the very question at issue.  That is, there is a question of fact whether a "Change of Control" in fact resulted from the sale, despite Navigator and Birch's representation to the contrary.  Telecom contends that Birch induced Navigator to represent that there was no "Change of Control;" *ie*. it convinced Navigator to "move to the other side of the table" to avoid assignment of the commissions obligation to Birch.  Navigator is not a party to this suit.  Birch had no relationship

with Telecom. Thus, its intent and its negotiation tactics with respect to the purchase of Navigator's assets in an arms-length transaction with Navigator are irrelevant to any issue in the case. The tortious interference and civil conspiracy claims are not legally viable under the peculiar facts of this case.

Telecom seeks to add a claim for intentional interference with its business (Counts Three and Four), claiming that "Birch also intentionally impaired or otherwise interfered with T[elecom]'s right to continue its relationship with existing customers, to develop new customer relationships, and/or to extend T[elecom]'s presence in the Telecommunications market generally." Prop. Am. Compl., ¶¶ 60-64.

This action has been pending since November of 2008. Telecom has provided no justification for the tardiness in seeking this amendment. Evidence concerning Telecom's customers and business operations which underlie such a claim was within the control of Telecom. To illustrate, Telecom included a lengthy quotation from an e-mail written by its own Regional Director commenting on aggressive sales tactics of Birch's sales representative. Prop. Am. Compl., ¶¶ 39, 40. The e-mails which were attached to the proposed amended complaint were sent by Telecom's Regional Director in March of 2009. Telecom attempts to bring this claim well over two years later.[1]

The original cut-off for the amendment of pleadings was March 15, 2010. (DN 43). There were numerous discovery disputes in this case, and a great deal of motion practice. On April 19, 2010, the United States Magistrate Judge granted additional time for the completion of "Change of

---

[1] We note that Telecom has not referred to the documents in support of proposed Counts Three (Intentional Interference with T[elecom]'s Relationship to End Users) and Four (Intentional Interference with Prospective Economic Advantage) as "newly discovered evidence" as it did in describing documents in support of its proposed Count Two (Intentional Interference with T[elecom]'s Relationship with Navigator).

Control" discovery and ordered that the "subsequent deadlines are commensurately extended an additional ninety days until after further order of this court after the parties and the court confer by teleconference." (DN 64). Arguably, this extension has no bearing on discovery and other deadlines unrelated to the "Change of Control" issue. If the deadlines were extended ninety days generally, the new cut-off date would be September 15, 2010. Even if the court permitted the dust to settle on all discovery-related motion practice, the last such order was entered March 30, 2011. These claims were not raised until August 2011. No justification has been offered for this belated attempt to amend. Amendment to add claims for intentional interference with Telecom's relationship to end users and with prospective economic advantage will therefore be denied.

As stated in our earlier decision, it is rare for a court to deny a motion for leave to amend a complaint, as the general rule is that leave is to be freely given when justice so requires. Fed.R.Civ.P. 15(a)(2). The counterpoint to the rule, however, is that amendment may be denied when the proposed amendment would be futile. *Kottmeyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006). The proposed claims would not survive a motion to dismiss. To overcome a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

For the reasons stated hereinabove, the court finds that the proposed amendments would improperly burden this action with legally unsupportable and/or untimely filed claims.

For the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the plaintiff, Telecom Decision Makers, Inc., for leave to amend the complaint (DN 93) is **DENIED.**

**IT IS SO ORDERED.**

February 27, 2012

**Charles R. Simpson III, Judge
United States District Court**