UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TELECOM DECISION MAKERS, INC.                                      PLAINTIFF


v.                                                CIVIL ACTION NO. 3:08CV-609-S


BIRCH COMMUNICATIONS, INC. f/k/a
ACCESS INTEGRATED NETWORKS, INC.                                   DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the following motions:

(1)  The renewed motion of the defendant, Birch Communications, Inc, for summary judgment (DN 105).

(2)  The motions of the plaintiff, Telecom Decision Makers, Inc., for leave to file a sur-reply (DN 123) and an amended sur-reply (DN 125).

(3)  The motion of the defendant, Birch Communications, Inc., to exclude the affidavit of Andrew C. Smith (DN 119).

(4)  The motion of the plaintiff, Telecom Decision Makers, Inc., for hearing and oral argument (DN 139).

A number of prior opinions of this court recount the basic legal and factual contentions of

the parties herein.  For purposes of continuity, the court will resurrect portions of our prior rulings

to present the current posture of the case.  We will then address the issues raised on summary

judgment.[1]

This is a declaratory judgment action seeking to ascertain the rights and obligations, if any,

of the parties, Telecom Decision Makers, Inc. ("Telecom") and Birch Communications, Inc. f/k/a

_____

[1]The court's prior rulings are recorded as DNs 26, 75, 90, and 103.  The magistrate judge issued a discovery ruling at DN 64 to which the court also refers herein.

Access Integrated Networks, Inc. ("Birch")  under a Sales Representative Agreement between Telecom and a non-party, Navigator Telecommunications LLC ("Navigator").   Telecom, an independent sales agent for the telecommunications industry, entered into an agreement with Navigator, a telecommunications provider and non-party to the suit, for Telecom to develop residential and business accounts for Navigator's local and long distance telephone services.  The contract provided, in part, that Navigator would pay Telecom continuing commissions (referred to in the agreement as "residual commissions," and also referred to by the parties as "evergreen commissions.") on revenue-generating accounts established by Telecom until termination of the customer contract. (Confidential Independent Sales Representative Agreement for Voice Products and Services (hereinafter, the "Telecom/Navigator agreement," or simply "the agreement"), ¶ 8). The agreement further provided that

> This agreement is binding upon and shall inure to the benefit of the successors and assigns of Navigator in connection with and in contemplation of any reorganization, bankruptcy, merger, consolidation, or sale of all or substantially all of the ownership interest or assets of Navigator, or any other transaction substantially similar in effect (collectively "Change of Control").  Upon a Change of Control, this Agreement will be deemed assigned to Navigator's successor notwithstanding that the Assignment is formally reduced to writing or not...

(Contract, ¶ 13).

Birch purchased certain business and residential lines from Navigator in 2008.  Prior to the execution of an Asset Purchase Agreement between Navigator and Birch (referred to herein as the "APA"), Navigator gave Telecom notice that it intended to exercise a provision in the Telecom/Navigator agreement which allowed Navigator to terminate its arrangement with Telecom for its own convenience, but required that Navigator continue to make all payments (e.g. commissions) then due to Telecom under the terms of the agreement. Contract, ¶ 11.  Later, but still

prior to execution of the APA, Birch notified Telecom that it was purchasing substantially all of the residential and business local and long distance customer accounts of Navigator. Once the APA was signed, Birch indicated that it had not assumed responsibility for and would not pay residual commissions to Telecom under the Telecom/Navigator agreement.

Telecom filed this action to obtain a declaration that Birch is obligated to pay commissions under the agreement. Telecom contends that Birch's purchase constituted a "Change of Control," triggering an assignment of the obligation to pay commissions under paragraph 13 of the agreement. Birch denies that its purchase constituted a "Change of Control" because it contends that the transaction did not involve all or substantially all of Navigator's assets. Birch urges that Navigator's retention of a significant volume of other lines (referred to as "coin lines") precludes a finding of a "Change of Control." Birch also contends that because it terminated the agreement for its convenience pursuant to paragraph 11, there was no agreement in existence to assign to Birch in any event.

Early on in the case, Birch moved for dismissal on the ground that a provision in the APA reciting that Birch was *not* acquiring all or substantially all of Navigator's assets established that the purchase did not, in fact, result in a "Change of Control." Birch argued, essentially, that it did not purchase all or substantially all of the assets of Navigator because it said that it did not do so. In denying the motion, the court stated that

> There is thus a dispute of fact concerning the specifics of the asset purchase. Therefore, dismissal will be denied. Birch's APA language stands in juxtaposition with TDM's allegation, taken as true, that there was a "Change of Control," as that term is defined by its agreement with Navigator, when the asset purchase was made.

6/20/09 Mem.Op. and Ord., p. 3.

The parties engaged in discovery to address the threshold issue of whether there was a

"Change of Control" as a result of Birch's acquisition.  There has been significant debate over the proper scope of discovery on this issue.  The magistrate judge ruled that Telecom was entitled to discover information that tended to support its theory of "Change of Control."  Birch sought unsuccessfully to limit discovery to "number of lines sold" and "gross revenue" for determining "Change of Control."  The magistrate judge found that this interpretation was "far too narrow."  The magistrate judge stated that,  "In the court's view, the plaintiff is entitled to its evidence and the opportunity to prove profitability as a legitimate measure of "Change of Control" or a transaction with a substantially similar effect.  It may or may not ultimately prevail on this theory, but to deny the information as a threshold matter is unwarranted."  4/19/10 Mem. and Ord., p. 4.

After receiving various documents, Telecom moved twice for leave to amend its complaint to allege, among other things, civil conspiracy and tortious interference with contract, noting that

> Birch conferred with Navigator numerous times in 2008 about selling the corporation.  Upon realizing Birch would assume liability for [Telecom]'s commissions, Birch began to investigate how to tailor the acquisition to cut them out.  Ultimately, Birch persuaded Navigator to "reinterpret" the  [contract] in order to escape liability.

DN 87-1, pp. 4-5.  It insisted that Birch and Navigator "colluded on a definition of Change of Control that would preclude [Telecom]'s claim," (*Id*., p. 3), that Birch intended to cause Navigator to breach its contract with Telecom, (*Id.,* p. 5*),* and that Birch acted "without legitimate justification and with animosity towards [Telecom]." (*Id.*).  The court determined that Telecom's newly proposed claims charted a course of litigation which veer[ed] far from the original contractual assignment claim," and denied the motion for leave to amend.  The court determined that the assignment claim posed  a mixed question of law and fact.  The court reasoned that the trier of fact must determine whether a "Change of Control," as defined by the agreement, occurred when Navigator and Birch

- 4 -

entered into the APA.  It must be determined whether the purchase of substantially all of Navigator's residential and business local and long distance customers constituted, in the words of the agreement, a sale of all or substantially all of Navigator's assets or a transaction substantially similar in effect.  The court stated that Telecom's right to payments from Birch, an entity with whom it has no contract, is derived solely from the contract terms Telecom struck with Navigator.  Telecom's rights rise or fall on the outcome of the contract claim.  Thus, the question of whether a "Change of Control" occurred is the driving force in this litigation.

Telecom alleges that there was an agreement to structure Birch's asset purchase in such a way as to prevent Birch from attaining successor liability for the ongoing commission payments to Telecom. It was the interpretation of the terms of the Telecom/Navigator agreement which Birch and Navigator apparently discussed and upon which they allegedly agreed they would base the purchase. The question of the effect of the acquisition by Birch is the subject concerning which Telecom contended there was "collusion."  However, no later agreement or understanding between Navigator and Birch could alter the obligations between Telecom and Navigator which are embodied in the Telecom/Navigator agreement.

The contract between Telecom and Navigator contemplated a sale of some or all of the assets of Navigator.  Telecom and Navigator contracted for successor liability to attach only in the event of a "Change of Control" of Navigator, as the parties defined that term.  Anything less did not assign the obligations to a third party purchaser of assets.  As the agreement contemplated a sale with or without a "Change of Control," the court found no basis upon which a claim for conspiratorial wrongdoing or tortious interference could be established.  The court noted that a structuring of an asset purchase so as to avoid assignment of a liability was *permitted* under the contract (*ie.* an

- 5 -

acquisition which does not result in a "Change of Control.").

The court determined that the sole question to be determined was whether the APA was structured successfully to avoid the assignment of contract obligations to Birch. If there was no "Change of Control," Telecom would have no right under the contract to enforce against Birch. If a "Change of Control" occurred, Telecom would succeed on its claim and recover the value of the contract obligation Telecom contends was wrongfully repudiated by Birch.

> Birch urges that a provision in its Asset Purchase Agreement ("APA") with Navigator which states that Birch did not acquire all or substantially all of Navigator's assets conclusively establishes that the sale did not result in a "Change of Control" under the terms of the T[elecom]/Navigator agreement. *There is a dispute of fact concerning the specifics of the asset purchase.* Therefore, dismissal will be denied. Birch's APA language stands in juxtaposition with *[Telecom's] allegation, taken as true [for purposes of a motion to dismiss], that there was a "Change of Control," as that term is defined by its agreement with Navigator, when the asset purchase was made.*

6/29/09 Mem. Op. and Ord., p. 3. To further clarify the scope of "Change of Control" discovery, the magistrate judge stated that

> [Telecom] is entitled to discover information that tends to support its theory of Change of Control. Birch's position, which would limit discovery to "number of lines sold" and "gross revenue" for determining Change of Control, is far to narrow. In the court's view, the plaintiff is entitled to its evidence and the opportunity to prove profitability as a legitimate measure of Change of Control or a transaction with a substantially similar effect. It may or may not prevail on its theory, but to deny the information as a threshold matter is unwarranted.

4/19/10 Ord., p. 4. Thus the court found that discovery must be focused on the specifics of the asset purchase.

In September of 2010, the court denied Birch's motion for summary judgment with leave to reinstate after the completion of "Change of Control" discovery. Birch has now filed a second motion.

- 6 -

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 2510.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

It is undisputed that the initial agreement between Telecom and Navigator commenced on January 13, 2005 and was to continue for a term of five years unless terminated earlier pursuant to the agreement's termination provision (paragraph 11).  (DN 1-3).  The contract was amended a number of times, most recently on January 29, 2007, this time providing for a term of six years unless terminated earlier pursuant to the same termination provision.[2]  On June 20, 2008, Navigator sent  30 days' prior written notice to Telecom of its exercise of its right to terminate the agreement

---

[2]The court has not been provided with a copy of the 2007 agreement.  The January 13, 2005 agreement was filed as an exhibit to the complaint  (DN 1-3).  The complaint recites the language of the 2007 amendments (DN 1, p. 4, ¶ 14).  Birch apparently does not take issue with the accuracy of the recitation, as Birch quotes the 2007  contract language in its summary judgment briefs, citing to the complaint.

for its convenience. In that notice, Navigator stated, "Please rest assured that Navigator will continue to pay commissions owed pursuant to Section 11 of the Agreement." (DN 1-5).

Birch argues that as a result of Navigator's termination of the Telecom/Navigator agreement on June 20, 2008, there was no agreement in existence which could have been assigned to Birch in November, 2008 when Birch entered into the APA with Navigator. Birch makes the additional argument, for the first time in its reply brief, that Section 8.e of the amended Telecom/Navigator agreement stating that "payment of residual commissions will survive...and will be paid...so long as...Navigator is collecting revenue...under this Agreement..." precludes Telecom from recovering anything from Birch on a claim for residual commissions. Birch reasons that after it entered into the APA with Navigator, Navigator no longer collected revenues for services under the agreement; Birch did, as the pertinent accounts had then been sold to Birch. Therefore, Birch urges, the requirement that Navigator collect revenue could not be met and no residual commissions were owed under Section 8.e. These two arguments will be addressed together. No genuine issue of material fact exists with respect to the factual foundation for these particular arguments. Therefore, these arguments may be disposed of on summary judgment. Neither argument has legs.

The Telecom/Navigator agreement governed the terms of remuneration for sales of certain products by Telecom until the agreement was terminated by Navigator, and Telecom was no longer authorized to sell the products and establish new accounts. Paragraph 11 of the agreement required thirty days' prior written notice from Navigator in exercising its right to terminate the agreement for its convenience. The notice letter to Telecom was dated June 20, 2008. Therefore, the agreement, by its terms, would have terminated July 20, 2008. The termination thus severed the sales representative relationship going forward from July 20, 2008.

- 8 -

Birch is correct that on the date it entered into the APA, there was no longer a sales representative agreement with Telecom.  However, the obligation to pay residual commissions arose prior to Navigator's termination of the agreement.  It "surviv[ed] the Term of [the] Agreement..," and Navigator was required to pay residual commissions "pursuant to the terms of Section 1 of this Agreement, for as long as (i) Navigator [was] collecting revenue...under this Agreement..." (Section 8.e).

Navigator's obligation to pay these residual commissions did not arise in a vacuum.  It arose under the terms of an admittedly viable agreement which memorialized the entire agreement of the parties concerning the sales representative relationship.  The parties' obligations must be considered in light of the entirety of the parties' agreement, not under any single term.  A contract must be construed as a whole, giving meaning to all terms where possible.  *Asbury Automotive Used Car Center v. Brosh*, 314 S.W.3d 275, 279 (Ark. 2009)("It is a well-settled rule that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement."); *Stonestreet Farm LLC v. Buckram Oak Holdings, N.V.*, Nos. 2008-CA-002389-MR; 2009-CA-000026-MR, 2010 WL 2696278 (July 9, 2010)(commissions clause in contract not extinguished following sale, despite lack of reference to provision in referencing that which survived closing).[3]

Various aspects of the parties' agreement related to the ongoing nature of commissions on current accounts.  The assignment clause (paragraph 13) of the agreement contemplated the

_____

[3]The court must apply the choice of law rules of Kentucky in this diversity action.  *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003) *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)(in diversity cases, district court applies the choice of law rules of the state in which the court sits).  Paragraph 24 of the agreement contains a choice of law provision designating Arkansas law as controlling.  We need not attempt to divine whether Kentucky courts would enforce the choice of law provision in accordance with the Restatement (2d) of Conflict of Laws, § 187, as predicted in *Wallace Hardware Co. v. Abrams*, 223 F.3d 382 (6th Cir. 2000), since Kentucky and Arkansas law are in accord on the applicable principles of contract law.

continuing vitality of residual commissions owed by Navigator under various scenarios, including a "Change of Control" of the company. In evaluating the obligation to pay residual commissions, the court must consider as a whole the agreement under which the obligation arose.

Birch focuses on the fact that the sales representative agreement was not viable and enforceable on the date Birch entered into the APA with Navigator. Its argument is a red herring. The question is whether the contract under which this ongoing obligation to pay residual commissions arose provides for assignment of that obligation to Birch. The viability of the sales representation agreement after July 2008 is irrelevant to this inquiry. Summary judgment will be denied on this theory.

The related argument that no commissions could be due because Navigator no longer collected revenue after the sale of those lines of business to Birch under the APA is unavailing for the same reason. Birch's argument focuses on the viability of the agreement on the date the APA was executed. The necessary inquiry, however, is whether the obligation was assigned by operation of the agreement from which that obligation to pay residual commissions arose, in which case Birch would stand in the shoes of Navigator for purposes of assessing the collection of revenue. There is no merit to this ground for summary judgment and it will be denied on this basis.

Birch's principal argument on summary judgment is that there was no "Change of Control" to trigger an assignment of the residual commission obligation. As the court has already noted, this question constitutes the "nuts and blots" of the case.

Birch contends that the undisputed evidence clearly establishes that no "Change of Control" occurred. It identifies a multitude of factors to support its conclusion:

(1) Only a small portion of the assets was sold to Birch.

- 10 -

(2)  Prior to the sale, Navigator had 50 employees and it now has 39.[4]

(3)  Navigator remained an operating company after the sale and continued to operate in the same business.[5]

(4)  Navigator's current revenues are $2.3-2.4 million per month, compared to $3.4 million prior to the sale.[6]

(5)  Navigator sold approximately 15-17% of its 104,000 telephone lines under the APA.

(6)  After the sale, Navigator retained 85% of its telephone lines and 78.8% of its revenue.

(7)  Using a calculation of earnings before interest, taxes, depreciation and amortization ("EBITDA"), Navigator's EBITDA increased by 96.2%.

Birch argues that no "Change of Control" occurred.  It principally relied upon the affidavit of David Stotelmyer, the Chief Financial Officer of Navigator, who concluded, based on the EBITDA analysis, that there was no "Change of Control." In response, Telecom offered the opinion of its expert, Andrew C. Smith, via an affidavit, that the sale did effect a "Change of Control," based on (1) Birch's acquisition process, (2) allocation of value based on gross margin, and (3) allocation of value based on net income.

Smith's initial opinions were apparently not based upon a review of a complete set of Navigator documents, and, for that reason, Birch moved to exclude Smith's affidavit as unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).  However, Fed.R.Civ.P. 26 expert disclosures were not yet due when the response and Smith affidavit were required to be

---

[4]In its most recent filing, Telecom has noted that Navigator recently announced that it would cease doing business.  It is unknown whether Navigator is still operating at this time.

[5]See footnote 4.

[6]See footnote 4.

filed, and Smith had not yet reviewed all of the documents.  (*see* DN 115).  Smith has now completed a full review and timely provided his expert report.[7]  Therefore, the motion to strike the affidavit will be denied as moot and Telecom's amended sur-reply will be ordered filed.  Birch has also filed its expert's report, and relies upon it in reply to Smith's analysis.

Based upon a review of the arguments and the expert reports, the court finds that there is clearly a factual dispute which precludes summary judgment on the question of "Change of Control."

Birch contends that judgment may be granted based on conclusion that Navigator did not sell all or substantially all of its assets to Birch.  It contends, in a nutshell, that Navigator's books and records establish that (1) Birch purchased only a percentage of the lines, and (2) that Navigator remained a viable, operating entity after the sale.  Birch now additionally relies upon expert testimony from Cheryl Shuffield, Certified Public Accountant, that the transaction between Navigator and Birch did not involve a sale of "all or substantially all" of Navigator's assets.  Thus while raw numbers in the business records of the company may provide some "undisputed facts," these mere numbers, without more, do not evidence whether a sale of all or substantially all of the assets of the company occurred.  Rather, Shuffield has provided her expert opinion concerning what the raw numbers establish about Navigator's business before and after the asset purchase.  Telecom has directly controverted this evidence with its own expert testimony concerning Navigator's business and the impact of the asset purchase.

---

[7]Birch urges that Telecom should not be permitted to file a sur-reply to incorporate by reference the complete review which was disclosed in Telecom's Rule 26 expert compliance.  As Telecom's expert disclosure was timely, we find no ground to deny Telecom the relief it seeks.  Birch would have the court strike the original Smith affidavit on the ground that it was formulated upon incomplete information and would have the court simultaneously deny Telecom the opportunity to meet that objection with a Rule 26 expert report by Smith which was filed within the court's deadline for expert disclosure.  The motion to strike will be denied as moot, as Smith's report states that it updates and supersedes the affidavit.  Smith Rpt., p. 4.  The objection to the filing of the amended sur-reply will be overruled without further discussion.

Citing to Delaware corporation law, Birch has aptly noted that whether a sale of all or substantially all of the assets of a corporation has taken place depends upon the particular qualitative and quantitative characteristics of the transaction at issue, and that the transaction must be viewed in terms of its overall effect on the corporation.  Birch Reply, p. 5, *citing Winston v. Mandor*, 710 A.2d 835, 843 (Del.Ch. 1997).  While certain foundational facts may be undisputed, that is far from the end of the inquiry.  There remains a genuine issue of material fact concerning whether there was a "Change of Control" of Navigator as a result of the asset purchase.

Courts in this circuit and elsewhere have consistently held that "When confronted with a 'classic battle of the experts, the jury must decide the victor.'...The Court is unwilling to invade the province of the jury and evaluate what weight and credibility the expert opinions deserve."  *In re Bendectin Products Liability Litigation*, 732 F.Supp. 744, 749 (E.D.Mich. 1990), *quoting Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529, 1535 (D.C.Cir.)*, cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984).  *See also, Stoker v. Mobex Communications, Inc.*, No. CV03-175-S-EJL, 2005 WL 1153617 (D.Idaho May 16, 2005)(factual questions as to how large a sale of assets must be in order to satisfy "any" modifier in contract; resolution involved genuine issues of material fact); *Ice Portal, Inc. v. VFM Leonardo, Inc*., No. 09-60230-CIV, 2010 WL 2351463 (S.D.Fla. June 11, 2010)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge..."; change of control provision susceptible to more than one construction could not be resolved on summary judgment.), *citing, in part, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Grismer v. Upjohn Company*, No. 92-C-20310, 1995 WL 390053 (N.D.Ill. June 26, 1995)("The court considers the [expert opinion] evidence...to create a classic 'battle of the experts.'...such

- 13 -

testimony presents a genuine issue of material fact.").

In conclusion, the court finds that summary judgment is precluded by the diametrically opposed expert testimony concerning the nature and characteristics of the asset sale and its impact on Navigator. For these reasons, summary judgment must be denied. A separate order will be entered this date in accordance with this opinion.

April 1, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

- 14 -